JULIA SPINELLI, PLAINTIFF-APPELLANT, v. ANDREW GOLDA, INDIVIDUALLY, AND WALTER GOLDA, INDI-VIDUALLY, AND ANDREW GOLDA AND WALTER GOLDA, TRADING AS GOLDA'S MARKET, AND VEGRO REALTY COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued November 20, 1950—Decided December 11, 1950.

Mr. *Joseph A. Lettieri* argued the cause for appellant (*Mr. Michael Breitkopf*, on the brief).

Mr. *William H. D. Cox* argued the cause for respondent Vegro Realty Company (*Messrs. Cox & Walburg*, attorneys).

Mr. *Alexander Avidan* argued the cause for respondents Andrew and Walter Golda, individually and trading as Golda's Market (*Messrs. Avidan & Avidan*, attorneys).

The opinion of the court was delivered by

WACHENFELD, J. The plaintiff sought to recover damages for injuries caused by the falling of a glass window. In June, 1946, as she was walking on a public sidewalk past the building known as 397 Myrtle Avenue, Irvington, a plate glass window, used by the tenant for the display of canned goods,

fell from the building and injured her. It had been cracked and a piece missing at the bottom for several months.

The property was owned by the defendant Vegro Realty Company, a New Jersey corporation, which in December, 1944, had leased the store in question to one Henry Golda by a written lease for the term of two years. The lease was marked in evidence and contained the following provisions:

"The tenant is also to keep the plate glass insured at his own expense. The landlord is to pay for the water and the Tenant is to supply his own heat from a separate heater which is in the cellar and connected with his store.

"In the event of any default in any of the covenants and conditions. of this lease, the Landlord at its option, may terminate the lease and re-enter and re-possess the premises. The Landlord is to do only structural repairs. The Tenant is to take care of the sidewalk, summer and winter, by keeping it clean and in good order."

The pretrial order named the tenant and included the specific denial of Andrew and Walter Golda that they were the tenants of the store in question or were in control or operation of it. The plaintiff nevertheless sought to prove her allegation made in the complaint that Andrew Golda and Walter Golda, individually and trading as Golda's Market, owned, operated and controlled the store.

At the close of the plaintiff's proof, the trial court entered a judgment of dismissal in favor of all the defendants. From the judgment so entered the plaintiff appealed to the Appellate Division of the Superior Court, the cause being certified here on our own motion.

The plaintiff asserts that when the owner of premises abutting on a public street leases them to others, with a covenant to make structural repairs, there continues in him a duty to maintain the premises in a safe condition for the protection of persons lawfully using the adjacent sidewalk. She further contends the occupiers of the premises were primarily liable for her injuries and there was error in the dismissal of her action against them. It is alleged also the trial court was in error in ruling that the large plate glass window was not a structural part of the building and in excluding certain expert

testimony and evidence of subsequent repairs made by the landlord.

■ A landlord is not responsible for injuries received by a person walking upon the public sidewalk in front of premises leased to and occupied exclusively by a tenant when the injuries are caused by a defect in the demised premises which occurred during the term of the lease. *Handlon v. Copestone Temple Ass'n.,* 106 *N. J. L.* 362 (*E. & A.* 1930); *Hammer v. Vanderbilt,* 116 *N. J. L.* 574 (*Sup. Ct.* 1936); *Wright v. A. J. M. Holding Co.,* 130 *N. J. L.* 239 (*Sup. Ct.* 1943).

The plaintiff, admitting the premises in question had been leased by the landlord, points to the covenant whereby he agreed to make "structural repairs" and contends he thereby retained control over the premises and assumed responsibility, citing *Restaino v. Griggs Motor Sales, Inc.,* 118 *N. J. L.* 442 (*Sup. Ct.* 1937). There the lease provided:

"The tenant does hereby covenant to make all necessary repairs to the interior of the demised premises, during the term of this lease, including all plumbing, painting, store maintenance and the replacing of all broken glass, except showroom plate glass. Should said repairs become necessary because of structural defects, they shall be made by the landlord."

■ The court, however, did not construe the term "structural defects" in that case, holding it was not necessary to decide whether the provisions of the lease imposed the duty of maintenance or repair of the window in question upon the landlord in order to determine the tenant's liability to a third person. It was the duty of the tenant to keep the demised premises in a safe condition and an agreement by the landlord to make repairs did not relieve him from this duty. The opinion cited *McKeown v. King,* 99 *N. J. L.* 251 (*E. & A.* 1923), where it was held that while the provisions of the lease fixed the obligation as between the landlord and tenant, nevertheless no provision of the lease could absolve the tenant of liability to third persons arising from his failure to maintain the sidewalk in front of the demised premises in a reasonably safe condition.

The lease in the case presently under consideration provided: "The landlord is to do only structural repairs," and the defendant realty company contends this provision of the lease has no application to the maintenance or repair of the plate glass display window as they do not come within the phrase "structural repairs."

In *Bertsch v. Small Investments, Inc.*, 4 *N. J.* 520 (1950), construing the words "structural change," we held they meant such a change as affects a vital and substantial portion of the premises or a change of its characteristic appearance, the fundamental purpose of its creation or the use contemplated.

We recognized *Paye v. City of Grosse Pointe*, 279 *Mich.* 254, 271 *N. W.* 826 (1937), where a building formerly consisting of two stores on the ground floor was altered by removing the partition wall to comprise one store. A plate glass front with a single center door was to replace two entrances. The court found this was not a "structural change." It held the proposed alteration did not change "the form or character of the building, its general appearance, or structural quality; it merely substitutes new windows and doors for the old ones and the size of the store is not enlarged * * * the installation of a new front is not a structural alteration within the meaning of the ordinance."

The replacing of a broken plate glass display window under the provisions of the lease in the case *sub judice* did not, in our opinion, constitute a "structural repair" as alluded to in the wording of the lease. This conclusion is fortified by the accompanying clause in the lease whereby the tenant agreed "to keep the plate glass insured at his own expense." We find no error in the court's conclusion in this respect.

The plaintiff seeks further to establish the liability of the landlord by showing it retained control over the window which caused her injuries, citing *Perry v. Levy*, 87 *N. J. L.* 670 (*E. & A.* 1915); *Taylor v. Majestic B. & L. Ass'n.*, 14 *N. J. Misc.* 699 (*Sup. Ct.* 1936), and *Dubonowski v. Howard Savings Institution*, 124 *N. J. L.* 368 (*E. & A.* 1940). She endeavored unsuccessfully to show that subsequent to the

accident a new plate glass window was installed and paid for by the defendant Vegro Realty Company. Admitting this would not prove negligence, it was nevertheless insisted the evidence was admissible as showing retention and possession of control over the window in the defendant landlord, thus making its exclusion error.

There are many cases in this State dealing with the landlord's retention of control over a portion of the demised premises and his consequent duty of repair and maintenance: *Nauman v. Central & Lafayette Realty Co., Inc.,* 137 *N. J. L.* 428 (*Sup. Ct.* 1948) ; affirmed, 1 *N. J.* 124 (1948) ; *Triggiani v. Olive Oil Soap Co.,* 1 *N. J. Super.* 55 (*App. Div.* 1948) ; *Casais v. Meyer L. Shapiro Estate,* 136 *N. J. L.* 304 (*Sup. Ct.* 1947) ; affirmed, 137 *N. J. L.* 608 (*E. & A.* 1948) ; *Bernstein v. Karr,* 22 *N. J. Misc.* 1 (*Cir. Ct.* 1943) ; *Trondle v. Ward,* 129 *N. J. L.* 179 (*E. & A.* 1942) ; *Monohan v. Baime,* 125 *N. J. L.* 280 (*E. & A.* 1940) ; *Millman v. U. S. Mtge. & Title Gty. Co.,* 121 *N. J. L.* 28 (*Sup. Ct.* 1938) ; *McCarthy v. Bye,* 118 *N. J. L.* 94 (*Sup. Ct.* 1937) ; *Rizzi v. Ross,* 117 *N. J. L.* 362 (*E. & A.* 1937) ; *Hahner v. Bender,* 101 *N. J. L.* 102 (*E. & A.* 1925) ; *Kramer v. Lehrhoff,* 99 *N. J. L.* 47 (*Sup. Ct.* 1923) ; *Kelly v. Lembeck & Betz Eagle Brewing Co.,* 86 *N. J. L.* 471 (*Sup. Ct.* 1914) ; affirmed, 87 *N. J. L.* 696 (*E. & A.* 1915) ; *Buda v. Dzuretzko,* 87 *N. J. L.* 34 (*Sup. Ct.* 1915) ; *Connors v. Newton,* 77 *N. J. L.* 125 (*Sup. Ct.* 1908) ; *Siggins v. McGill,* 72 *N. J. L.* 263 (*E. & A.* 1905), the most recent, which we do not pass upon, being *Daniels v. Brunton,* 9 *N. J. Super.* 294 (*App. Div.* 1950).

The cases where evidence of subsequent repairs was permitted are generally restricted to apartment and multi-family dwellings occupied by more than one tenant, where the common hallways, stairs, roofs, fire escapes, central heating plants and other facilities are involved, and the question arose as to whether the landlord retained control over such common passageways, facilities or other portions of the building in common use.

■ Evidence of subsequent repairs has likewise been held admissible to show control of the instrumentality which caused injury where a question was raised as to whether or not it was located on a public easement and where, even though the landlord had demised the entire premises, he retained and continuously availed himself of access to the structure alleged to constitute a nuisance. *Pirozzi v. Acme Holding Co. of Paterson*, 5 *N. J.* 178 (1950).

Such evidence has also been admitted when a sharp factual dispute existed and when there was testimony which could be construed either way as to whether or not the landlord retained control of an elevator erected outside of the building where it was accessible to and had been used by others than employees of the tenant. *White v. Ellison Realty Corp.*, 5 *N. J.* 228 (1950).

Seemingly colliding with the rule as established in this class of cases is *Schwartz v. Federal Deposit Ins. Corp.*, 127 *N. J. L.* 556 (*E. & A.* 1942). The court, referring to subsequent repairs, held it was immaterial and of no significance, saying:

"The fact that repairs were made in this case is not significant as to the control by the landlord, and moreover was not evidence of negligence,"

and, in disposing of two of the above-cited cases, said:

"We do not read *Taylor v. Majestic Building and Loan*, 14 *N. J. Mis. R.* 699, and *Dubonowski v. Howard Savings Institute*, 124 *N. J. L.* 368, as imposing liability, except as in tenement house cases or like situations, where the landlord has retained to himself control of the approaches, halls and stairways for the common use of occupants and those having lawful occasion to be there."

Buttressing and supporting this decision is *McClafferty v. Tide Water Assoc. Oil Co.*, 2 *N. J. Super.* 626 (*Law Div.* 1948), where again referring to repairs made by the landlord after the occurrence of the accident, the court decided:

"The mere fact alone that defendant, Tide Water, did replace the rope after the accident does not, in itself, establish under the pleadings and the evidence in this case sufficient evidence to present a fact question of control.    *    *    *

"The doctrine of reserved control in our case law seems to be applicable to multiple dwelling houses and common stairway cases in nearly every instance, and not to a case similar to the one now before this Court."

What then is the applicable rule in the present case?

■ Where a multi-family dwelling is not involved, and when the entire premises are demised by a clear and unambiguous written lease specifying which party shall make repairs and under what circumstances, the landlord retaining no right of general access or user during the term of the lease, and when there is no conflict as to the occurrence of the accident, will the mere fact that the landlord thereafter made repairs be sufficient, in itself, to create a fact question of control to be submitted to a jury? We think not.

If this hypothesis were accepted, the making of repairs would either change or void the solemn agreement of the parties contained in the lease, concerning which there was otherwise no dispute. This, in turn, would bring about legal chaos.

■ It is only where there is an actual controversy as to the measure of control retained by the landlord arising from the letting, its terms and conditions, or from extrinsic circumstances, that evidence of subsequent repairs is admissible to assist the jury in deciding the issue thus presented.

Common access and user are not involved in this case. There are no other tenants nor is there a question of fact to be decided on conflicting testimony. The written lease between Vegro Realty Company and the tenant, Henry Golda, demised the entire store to the tenant, Henry Golda, and no part of the premises was reserved to the use, possession or control of the landlord.

■ The plate glass window, the breaking of which caused the plaintiff's injury, was used by the tenant in the conduct of the butcher and grocery business for the display of canned goods and the lease contained a specific reference to the plate glass and provided the tenant was to keep the plate glass insured at his own expense. These uncontroverted facts, plus the instrument itself, clearly disclose the intention of the

parties that the maintenance and control of the plate glass
window were to be exclusively the tenant's and not the respon-
sibility of the landlord.

The proffered evidence, under these circumstances, could
not create, fix or indicate control in the landlord and we see
no error in its exclusion.

The appellant next contends the term "structural repair"
is a techincal term used in the building trade and consequently
the issue as to the sense in which it was used in the lease
became a question of fact for the jury and it was error for
the court to exclude expert testimony as to the meaning of
"structural repair" and to determine it as a matter of law.

The witness was never asked as to whether or not "struc-
tural repair" was a technical term or its meaning in the
building trade or in any other respect, nor is there any evi-
dence that the phrase used had acquired a peculiar meaning
different from that customarily attributed to it.

The question ruled upon and presented before us is: "Can
you tell the court and jury whether or not a window for
a store front would be part of the structural part of the
building?"

The witness had never made an inspection of nor even
seen this building and therefore had no personal knowledge
concerning its characteristics or construction. As a matter
of fact, the question did not relate to the particular building
or display window involved but was a general inquiry by which
counsel sought to establish that a window in a store front
would be a structural part of the building. Under the cir-
cumstances, it was objectionable, being too general and not
relating or being pertinent to the governing facts and circum-
stances existing. *Rempfer v. Deerfield Packing Corp.*, 4
*N. J.* 135 (1950); *Schumann v. Horn & Hardart Baking
Co.*, 8 *N. J. Super.* 153 (*App. Div.* 1950).

If it was intended to construe and determine the
meaning of the phrase "structural repairs" used in the lease,
it would have been improper as the construction and effect of
the written instrument is ordinarily a question of law to be
determined by the court.

"The construction and effect of a written instrument is a matter of law to be determined by the court and not by the jury; but when such construction depends upon extrinsic facts, as to which there is a dispute, a jury question is presented." *Downs v. N. J. Fidelity & Plate Glass Ins. Co.*, 91 N. J. L. 523 (*E. & A.* 1918).

Here the construction of the term depended upon no disputed extrinsic facts; consequently there was nothing for the jury to decide. Under these circumstances, it was properly the court's duty to construe the meaning of the phrase and the construction it adopted is in accord with *Bertsch v. Small Investments, Inc., supra.*

After a full consideration of all the reasons advanced by the plaintiff, we find no error in the action of the court below in dismissing the complaint against the defendant Vegro Realty Company.

Lastly it is urged error was committed in dismissing the plaintiff's action against the defendants Andrew and Walter Golda upon the ground that the pleadings aver and the evidence shows them to be in possession and occupancy of the premises in question.

The pleadings did so aver but there is absolutely no evidence to substantiate the allegation.

The appellant's theory that a tenant or occupant of premises owes, to third persons resorting thereto in the course of business or upon express or implied invitation, a duty to keep the premises in a reasonably safe condition, and that this duty to third persons persists regardless of whose duty it is, as between landlord and tenant, to make repairs thereon, is not controverted. There is, however, no testimony justifying the conclusion that the individual defendants here charged were either tenants or occupants of the premises from which the plate glass window fell. They denied they were tenants in possession in their answer and at the pretrial conference. Their denial is also contained in the pretrial order, which specifically referred to the written lease marked in evidence, running to, executed and signed by the tenant, Henry Golda, who was never made a party to the action.

An averment in a complaint, denied in the answer and unsupported by any evidence, is not sufficient to create a question of fact to be decided by the jury.

The judgment below is affirmed.

*For affirmance in toto*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal as to Vegro Realty Company, affirmance as to Andrew and Walter Golda*—Justice HEHER—1.