278 N.J. Super. 129 (1994)
650 A.2d 808
JOHN KANE, PLAINTIFF-APPELLANT,
v.
HARTZ MOUNTAIN INDUSTRIES, INC., HARTZ MOUNTAIN DEVELOPMENT CORP., HARTZ-CLAIBORNE LIMITED PARTNERSHIP, LIZ CLAIBORNE, INC., NACAMULI ASSOCIATES, JOSEPH ROMEO, KENNETH CARL BONTE, KEITH A. MICHAELS, JOHN DOES, DEFENDANTS-RESPONDENTS. HOWELL STEEL, INC., DEFENDANT-RESPONDENT-THIRD-PARTY PLAINTIFF,
v.
EASTERN STEEL ERECTORS, INC., THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1994.
Decided December 13, 1994.
*133 Before Judges SHEBELL, SKILLMAN and WALLACE.
Thomas A. Kalapos, argued the cause for the appellant (Atkinson & DeBartolo, attorneys; Mr. Kalapos, of counsel and on the brief).
Frank Zazzaro, argued the cause for respondents Hartz Mountain Industries, Inc., Hartz Mountain Development Corp., Hartz-Claiborne, L.P., Joseph Romeo, Kenneth Bonte and Keith Michaels (Waters, McPherson & McNeill, attorneys; Kenneth D. McPherson, Jr., on the brief).
Rebecca Mulligan, argued the cause for respondent Howell Steel Service, Inc. (Donington, Karcher, Salmond, Ronan & Rainone, attorneys; Susan S. Rankin, on the brief).
*134 Bradley M. Wilson, argued the cause for respondent Nacamuli Associates (Feuerstein, Sachs, Maitlin, Fleming & Greene, attorneys; Mr. Wilson, on the brief).
Sean F. Colquhoun, argued the cause for respondent Eastern Steel Erectors Inc. (Colquhoun & Colquhoun, attorneys; Sean F. Colquhoun, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
In this personal injury action, plaintiff appeals from an adverse jury verdict. On December 20, 1985, plaintiff, John Kane, was severely and permanently injured, while working as an iron worker, when he fell from a beam. The beam was part of a structural steel frame being erected by his employer, Eastern Steel Erectors (Eastern), for a warehouse being constructed for Hartz-Claiborne Limited Partnership (Hartz-Claiborne) in North Bergen.
On March 9, 1987, plaintiff filed a complaint seeking damages for his injuries against Hartz Mountain Industries, Inc. (Hartz Mountain), the general contractor; Joseph Romeo, Hartz Mountain's construction superintendent, and other unknown defendants. Plaintiff alleged that defendants failed to keep the premises reasonably safe and failed to comply with applicable federal and state safety codes. Thereafter, amended complaints were filed adding as defendants, Hartz-Claiborne, Howell Steel, Inc. (Howell), Nacamuli Associates (Nacamuli), Hartz Mountain Development Corporation (Hartz Development), Liz Claiborne, Inc., Kenneth Carl Bonte and Keith A. Michaels.
The facility was being built by Hartz-Claiborne, a limited partnership formed for this purpose. Hartz-Claiborne was comprised of Liz Claiborne, an apparel manufacturer, Hartz Mountain, a major developer, and Hartz Development, the owner of the land (we refer to these parties collectively as the Hartz defendants). Hartz-Claiborne had no employees of its own. Apparently Hartz Mountain acted as the general contractor in its role as a partner in *135 Hartz-Claiborne. Hartz-Claiborne entered into an agreement with Howell, a South Carolina corporation, whereby Howell agreed to furnish all labor, materials and equipment necessary to complete structural steel work on the project. The contract specified that Howell was responsible for full compliance with safety standards. Howell, being in the business of steel fabrication only, subcontracted with Eastern, plaintiff's employer, for the erection of the structural steel. This contract had a "safety" subsection whereby Eastern agreed to be solely responsible for complying with OSHA and all other applicable safety regulations. Eastern agreed to indemnify and hold harmless Howell and the "owner" of the project from any losses or claims arising out of Eastern's work on the project.
Howell, the Hartz defendants, Nacamuli and Liz Claiborne all filed answers generally denying liability and seeking indemnification and contribution from one another. Howell joined Eastern as a third-party defendant, alleging that Eastern's negligence had caused the injury to plaintiff, Eastern's employee, and that Eastern had contractually agreed to indemnify Howell for any personal injuries arising out of Eastern's performance of its subcontract with Howell.
In February 1989, Eastern answered maintaining that its July 1985 indemnification agreement with Howell was contrary to public policy under N.J.S.A. 2A:40A-1. On September 26, 1990, summary judgment was granted to Eastern on the grounds that the indemnification agreement was void. In June 1991, Howell's motion to vacate the summary judgment in favor of Eastern was granted. The decision was based on our holding in Secallus v. Muscarelle, 245 N.J. Super. 535, 586 A.2d 305 (App.Div. 1991), that indemnification was invalid under N.J.S.A. 2A:40A-1 only where the party to be indemnified was the sole negligent party.
Prior to the commencement of trial, Nacamuli moved to prevent plaintiff's experts from stating the law, or opining as to whom OSHA regulations were applicable. The trial judge agreed with the thrust of Nacamuli's motion and, throughout the presentation *136 of plaintiff's case, limited the testimony of plaintiff's expert. The judge also ruled that defendants could present evidence of plaintiff's comparative negligence.
On the first day of trial, the judge, following the holding in White v. Newark Morning Star Ledger, 245 N.J. Super. 606, 586 A.2d 341 (Law Div. 1990), determined that Eastern would be allowed to participate in the trial. An eight day trial followed. At the close of plaintiff's case, plaintiff dismissed its complaint as to Romeo and Hartz Development. On September 24, 1992, the jury returned a verdict of no cause for action as to Nacamuli and the remaining Hartz defendants. Plaintiff's motion for a new trial was denied and plaintiff appeals to this court.
The trial testimony reveals that on December 20, 1985, a cold and rainy day, the forty-three year old plaintiff, hired out of the local union hall, had been working on the site for a few days. He had about twelve years of experience in structural steel erection as an "iron worker." The warehouse under construction was to be a three-story structure with a roof. The floors were designated as "ground," "first," and "second." Eastern was the only contractor on the site that day. Construction had not yet advanced to the point where the concrete slab for the ground floor was in place, and no decking or flooring was in place over the steel frame at the upper levels.
Upon returning from lunch, because of poor weather conditions, the decision was made to cease work. Plaintiff and his foreman, Craig Dillon, went up the partially erected steel structure to retrieve their tools and to secure the site for the weekend. They proceeded to tighten up the "turn buckle" on one of the steel welds in order to "plumb up" the steel columns. Plaintiff was sitting on a beam at the level which would be the floor of the third story upon completion. This was a distance of approximately twenty-nine feet from the ground. His feet were locked underneath the beam when a strap, which secured the weld to the column, snapped. Plaintiff lost his balance and fell to the rocky ground, sustaining catastrophic injuries. Robert Shaw, also a *137 foreman, testified that the ground within the frame of the steel structure, where he saw plaintiff after the fall, was "a rocky area." He explained: "It was hard  hard dirt and rock around the area."
Plaintiff presented the testimony of a civil engineer, William Poznak. The trial judge ruled that Poznak could not testify as to the content of the OSHA regulation applicable to this job, because it was a matter of law for the court to instruct the jury on. Poznak was allowed to testify that 29 C.F.R. § 1926.105 was one of several safety regulations generally accepted within the construction industry as governing the use of safety nets. However, he was not allowed to read the regulation to the jury.
29 C.F.R. § 1926.105(a) reads:
Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.
Poznak noted that the Associated General Contractors of America has a similar standard in its accident prevention manual, as does the National Safety Council. Poznak also testified that there may be special conditions, such as the existence of rubble or machinery below the work area, which make it necessary to provide nets or protection such as temporary decking, for a lesser height than specified in the OSHA regulations. His opinion was that there had been a violation of applicable safety standards in connection with plaintiff's accident because of the failure to provide nets.
Poznak further testified that it is generally accepted in the construction industry that a general contractor is responsible for the overall protection of workers on a job site, and that a subcontractor selected to perform particular work is also responsible for ensuring compliance with the regulations applicable to that part of the project.
Poznak also opined that Nacamuli, the structural engineer hired to perform construction inspections, was thereby responsible to report all safety violations. Poznak stated that safety nets are neither difficult nor time consuming to place. He also commented that safety belts were not practicable when iron workers were *138 doing "bolting up" work. He explained that they have to be able to move "like rabbits" to avoid being hit by the steel, which may swing as it is being hoisted up.
Seymour Bodner, the Hartz defendants' engineering expert, viewed the controlling OSHA standard as 29 C.F.R. § 1926.750, part of the section on Steel Erection. 29 C.F.R. § 1926.750(b)(2)(i), provides:
Where skeleton steel erection is being done, a tightly planked and substantial floor shall be maintained within two stories or 30 feet, whichever is less, below and directly under that portion of each tier of beams on which any work is being performed, except when gathering and stacking temporary floor planks on a lower floor, in preparation for transferring such planks for use on an upper floor. Where such a floor is not practicable, paragraph (b)(1)(ii) of this section applies.
[(Emphasis added.)]
Bodner interpreted § 1926.750(b)(2)(i) to require planking or flooring within two stories of a work area even if less than thirty feet, but he maintained that a ground surface can constitute, or substitute for, the "tightly planked and substantial floor" required by 29 C.F.R. § 1926.750(b)(2)(i). Through this interpretation, he concluded that defendants were in compliance with § 1926.750(b)(2)(i). He found no need to refer to 29 C.F.R. § 1926.750(b)(1)(ii), which states:
On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet. The nets shall be hung with sufficient clearance to prevent contacts with the surface of structures below.
[(Emphasis added.)]
Bodner did, however, on cross-examination by plaintiff's counsel, appear to grudgingly acknowledge that there may be other factors, such as working over heavy machinery, which might require other precautions.
Plaintiff's counsel also brought out on cross-examination of Bodner that Bodner had previously stated, during his deposition, that safety nets would have been impractical because of the delays and costs involved. However, Bodner insisted twice on cross-examination that his opinion in this regard would not change even *139 if it were shown that after plaintiff's fall, nets were actually utilized.
John Toto, a licensed engineer called as an expert by Howell, testified that it was the custom in the industry for the steel erector to "take the lead" in implementing necessary safety measures. He acknowledged that his report stated that safety nets should be suspended where men are working more than twenty-five feet above the floor, ground or water, if it is not feasible to use safety belts, life lines, or temporary floors. This he confirmed reflected the standard in the industry as well as the OSHA standard.
Louis Nacamuli, one of the principals in Nacamuli, stated that the contract to perform inspections on the project required the firm to ensure that the structural steel was in place according to plans and specifications, but did not require safety inspections. Nacamuli's engineering expert also testified that the Nacamuli contract did not require safety inspections.
The defense affirmatively asserted that plaintiff should have taken safety precautions to prevent or cushion his fall. Plaintiff testified that he was not wearing a safety belt because none were available on the job. He maintained that safety belts are only practical when walking around on steel beams, not when performing a sit-down task such as he was engaged in at the time.
Bobby Shaw concurred with plaintiff's view that it would not have been feasible for plaintiff to wear a safety belt at the time of the accident. Shaw testified that he complained about there being no nets on the job, but that he was not the union shop steward and did not have the authority as a foreman to report unsafe conditions or take the crew off the project.
Craig Dillon, plaintiff's foreman, was called as a defense witness. Although he agreed that safety belts were not supplied on the job, he believed that some men carried their own. Dillon asserted that the shop steward never requested nets on the job, although he did concede that the decision as to whether to hang *140 nets is determined by OSHA regulations. The secretary-treasurer of Eastern testified that if the men on the project were going to wear safety belts, they would purchase them or acquire them from the union. He characterized it as a tool a worker brings to the job.
In instructing the jury, the trial court advised that "as a matter of law, the construction of this project was subject to legal standards of OSHA." The judge summarized the competing provisions in the regulations and told the jurors that it was their function to determine which regulation was applicable. The judge also instructed that Hartz-Claiborne and Howell had joint responsibility for any OSHA violation, because OSHA makes a prime contractor and all tiers of subcontractors responsible for complying with its standards. The court told the jurors that OSHA regulations did not pertain to Nacamuli's duties, and that they were to evaluate Nacamuli's responsibilities in accordance with the standards pertaining to professional engineers, on which the jurors heard conflicting expert opinions.

I
Plaintiff urges that the trial judge erroneously charged the jury that it could only find negligence on the part of defendants if it found an OSHA violation, or stated another way, a finding of compliance with the technical terms of the OSHA regulations prohibited a finding of negligence. We agree that the judge's approach to this issue both during the trial and in his jury instruction constituted reversible error.
As a general rule, a landowner has a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers. Cassano v. Aschoff, 226 N.J. Super. 110, 114, 543 A.2d 973 (App.Div.), certif. denied, 113 N.J. 371, 550 A.2d 476 (1988). However, an exception had been that a property owner, or a general contractor as the owner's agent, was not responsible for harm which occurred to an employee as a result of the very work which that employee was hired to perform. Id. at *141 115, 543 A.2d 973; Wolczak v. National Elec. Prods. Corp., 66 N.J. Super. 64, 73, 168 A.2d 412 (App.Div. 1961).
In Meder v. Resorts Int'l Hotel, 240 N.J. Super. 470, 475, 573 A.2d 922 (App.Div. 1989), certif. denied, 121 N.J. 608, 583 A.2d 310 (1990), we pointed to a change in this approach to workplace liability brought about by our holding in Bortz v. Rammel, 151 N.J. Super. 312, 376 A.2d 1261 (App.Div.), certif. denied, 75 N.J. 539, 384 A.2d 518 (1977). In Bortz, we noted that New Jersey's adoption of the Construction Safety Code (Code) had had "a substantial impact on the continued viability" of the rule that a general contractor is not generally liable for injuries to employees of the subcontractor resulting from either the condition of the premises or the manner in which the work is performed. Bortz, supra, 151 N.J. Super. at 320, 376 A.2d 1261. The regulations promulgated under the Code required a general contractor to assure Code compliance by its employees and subcontractors, and therefore, we found a legislative intention to assure a single repository of the responsibility for the safety of all employees of a job. Id. at 321, 376 A.2d 1261. We held that a right of tort action in those who are injured when there is a failure of compliance was required to assure continuing compliance by the general contractor with the responsibility imposed by the Legislature. Id. at 321, 376 A.2d 1261.
The regulations relied upon in Bortz were thereafter repealed when the United States Department of Labor assumed responsibility for regulating occupational safety and health under OSHA. See Meder v. Resorts Int'l Hotel, supra, 240 N.J. Super. at 475, 573 A.2d 922. Nonetheless, we held in Meder that these regulatory changes did not affect the public policy expressed in Bortz. Id. at 477, 573 A.2d 922. We reversed the dismissal of the complaint against Resorts, the general contractor, and reinstated the claim of Meder, an employee of the sub-contractor. Id. We found that "violation of the obligations imposed by the federal regulations supports a tort claim under state law." Id. at 476, 573 A.2d 922. 29 C.F.R. § 1926.16 and 29 C.F.R. § 1926.20 dictate that the prime *142 contractor and any subcontractors are responsible jointly for any failure to comply with OSHA safety standards such as are at issue in the present case. Because of these provisions, the trial judge charged the jury that both Howell and the Hartz defendants were responsible for any OSHA violations.
As to the standard for imposing liability against those defendants, the judge's charge appears to have been a hybrid between a general negligence standard and one requiring a finding of a regulatory violation. Coupled with a general negligence charge, he told the jury:
[i]t is still the reasonable standard. However, I must say this  when we are talking about standards that are established by law, we are talking about applying the standard as written in the law. It is not a discretionary situation.
The judge went on to tell the jury that the law sometimes sets arbitrary lines, such as requiring a particular age for Social Security or for a driver's license, and that the jury was to "apply what the law says." We understand this instruction to have prohibited the jury from considering evidence regarding industry-recognized safety standards unless they were embodied in the OSHA regulations.
We find this charge to be unsatisfactory. Compliance with an OSHA regulation does not in and of itself preclude a finding of negligence. See Restatement (Second) of Torts, § 288 C (1965) (compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions); Kelley v. Howard S. Wright Constr. Co., 90 Wash.2d 323, 582 P.2d 500 (1978); Pruett v. Precision Plumbing, Inc., 27 Ariz. App. 288, 554 P.2d 655 (1976); Funk v. General Motors Corp., 392 Mich. 91, 220 N.W.2d 641 (1974). We hold that Hartz Mountain, as the general contractor, and Howell, as the subcontractor for the erection of the structural steel, each had a non-delegable duty to maintain a safe workplace. This duty is imposed to ensure "prospective and continuing compliance" with the legislatively imposed non-delegable obligation to all employees on the job site, without regard to *143 contractual or employer obligations. Bortz, supra, 151 N.J. Super. at 321, 376 A.2d 1261.
Thus, although the trial judge adhered to our holding in Meder by instructing the jury that both Howell and Hartz Mountain were responsible for any OSHA violations, thereby dispelling any supposition the jury might have had that Howell and Hartz Mountain could be relieved of liability if it found that Eastern alone made the decision as to whether to install nets, the judge's charge erred in conditioning liability on a finding of an OSHA violation, rather than basing liability on general negligence standards.
We recognize that it is entirely feasible to make liability turn directly on the critical issue of whether there was a violation of an OSHA regulation pertaining to safety. See O'Neil v. Wells Concrete Prods. Co., 477 N.W.2d 534, 537 (Minn. Ct. App. 1991). We are, however, convinced that the paramount consideration of a worker's safety is more clearly placed in focus by a more comprehensive rule which makes the primary contractor and each tier of subcontractor responsible for the safety of the workers under them on general negligence principles. This appears preferable to limiting liability to a specific finding of a violation of a regulation, which in some instances may be obscure, vague or difficult to comprehend or apply. See Corbesco, Inc. v. Dole, 926 F.2d 422, 427 (5th Cir.1991).
We do not see our present holding as a departure from existing law. Our reading of the 1977 holding of this court in Bortz, supra, is that it was decided at that time that a general tort remedy based on general negligence principles was the standard for imposing liability. We stated in Bortz:
We, therefore, base plaintiff's right of action not only on a traditional negligence theory with a statutory mandate providing the source of the legal duty, but also on the policy and rationale of the draft Restatement section.[1]

*144 [Bortz, supra, 151 N.J. Super. at 322, 376 A.2d 1261.]
In addition, we agree with the parties' apparent concurrence that the finding of an OSHA violation does not ipso facto constitute a basis for assigning negligence as a matter of law; that is, it does not constitute negligence per se. See Cadillac Fairview of Florida v. Cespedes, 468 So.2d 417 (Fla. Dist. Ct. App.), review denied, 479 So.2d 117 (Fla. 1985). The trial judge's charge was in this regard not exceptional.

II
Even were we to have concluded that the finding of an OSHA violation was a prerequisite to a finding of liability against Hartz Mountain and Howell, reversal would nonetheless be required. We find error in the trial judge's failure to provide adequate guidance to the jury regarding the proper interpretation of the OSHA regulations, and in his failure to instruct the jury as to which of the regulations should apply depending on the possible alternative factual findings of the jury. He left what was clearly a judicial function to the unbridled discretion of the jury. It was, of course, for the jury to determine such facts as the condition of the terrain, the height of plaintiff's fall and the like; but, it was for the judge to interpret the regulations, and to explain how to apply them to the facts as the jury might find them to have existed at the time. This the judge failed to do. It appears that the judge may not have been provided with a complete set of the applicable regulations making it difficult to place the various provisions cited by the experts in proper context. Regarding the interplay of the various OSHA regulations at issue, we refer the parties and the judge to Donovan v. Marr & Son Co., 763 F.2d 477 (1st Cir.1985); Donovan v. Adams Steel Erection, Inc., 766 F.2d 804 (3d Cir.1985); Brock v. Williams Enter., 832 F.2d 567 (11th Cir.1987); Corbesco, Inc. v. Dole, supra, 926 F.2d 422. Particular note should be given to 59 Fed.Reg. 40672-40724 (1994).

III
Plaintiff contends that the trial judge's decision to permit Eastern to participate in the jury trial of plaintiff's case constituted *145 reversible error. See Ramos v. Browning Ferris Indus., 103 N.J. 177, 184, 510 A.2d 1152 (1986). Plaintiff urges that Eastern's participation allowed defendants to blame Eastern for the accident, and that the trial judge's decision to prevent Eastern from making a closing statement, after it had already participated in the trial, gave the jury the impression that plaintiff had settled with Eastern and had thereby been compensated for his injuries.
By virtue of the exclusive remedy provisions of the Workers' Compensation Act (Act) an employer is immune from suit by an employee, and may not be sued for contribution by a third-party tortfeasor. Ramos v. Browning Ferris Indus., supra, 103 N.J. at 184, 510 A.2d 1152. Accord Port Auth v. Honeywell Protective Serv., 222 N.J. Super. 11, 18-19, 535 A.2d 974 (App.Div. 1987). However, "[n]othing in the Act precludes an employer from assuming a contractual duty to indemnify a third party through an express agreement." Ramos, supra, 103 N.J. at 191, 510 A.2d 1152. Employers, who have agreed to indemnify a party sued by a plaintiff-employee, may be joined as third-party defendants in the employee's suit against the indemnitee. See Secallus v. Muscarelle, supra, 245 N.J. Super. at 538-39, 586 A.2d 305 and Hagen v. Koerner, 64 N.J. Super. 580, 588, 166 A.2d 784 (App.Div. 1960).
Moreover, regardless of whether an employer is joined in a plaintiff's suit by a third-party complaint, and despite the fact that the employer is immune from suit by an employee, the employer's negligence may under certain circumstances be placed in issue during the trial of plaintiff's suit by a defendant. See Fabian v. Minster Mach. Co., Inc., 258 N.J. Super. 261, 276-77, 609 A.2d 487 (App.Div.), certif. denied, 130 N.J. 598, 617 A.2d 1220 (1992) (citing Brown v. United States Stove Co., 98 N.J. 155, 171, 484 A.2d 1234 (1984) (defendant-manufacturer in product liability action could attempt to shift responsibility to plaintiff's employer with an "empty chair defense," which the court characterized as an effort to shift causal blame to another who is not legally liable in suit)). Accord Sanna v. National Sponge Co., 209 N.J. Super. *146 60, 66, 506 A.2d 1258 (App.Div. 1986) (noting that, after reinstatement of plaintiff's negligence action against owner of premises on which he was injured in the course of his employment, negligence of plaintiff's employer (an independent contractor) would be a jury question on the issue of proximate cause); Ramos v. Browning Ferris Indus., 194 N.J. Super. 96, 105-06, 476 A.2d 304 (App.Div. 1984), rev'd on other grounds, 103 N.J. 177, 510 A.2d 1152 (1986) (while employer's negligence is not submitted to the jury, defendant is not deprived of the benefit of the employer's conduct as a circumstance to consider in judging the reasonableness of the defendant's actions).
Here, the trial judge allowed Eastern to "participate" in the jury trial of plaintiff's case, but he ruled that Eastern's negligence would be submitted to the jury only if the jury first returned a verdict finding that neither the Hartz defendants nor Nacamuli were negligent, and that Howell was 100% negligent. In that event, the court would require the jury to decide whether any negligence was attributable to Eastern, in order to determine the enforceability of the Eastern-Howell indemnification agreement.
We conclude that it was neither necessary nor appropriate to permit Eastern to participate in the presentation of plaintiff's case. The issue placed before the jury was whether there were violations of industry-wide or regulatory safety standards. The judge ultimately charged the jury that Howell and the Hartz defendants were responsible for any such violation. In this context, we are convinced that Eastern would not be prejudiced by a separate trial on the indemnification issue. The trial of the third-party claim should be severed, as unquestionably any liability of Howell is not so independent of the failure of Eastern to abide by safety standards as to bring about the result that Howell might be held liable without a similar finding of fault on the part of Eastern.
In any event, Eastern, merely by reason of its status as indemnitor of Howell, should not be accorded the advantage of participating at trial. A bare agreement to indemnify does not *147 carry with it the obligation to defend, and it does not provide a right to control the litigation.

IV
Plaintiff also contends that he should have been able to introduce testimony concerning the post-accident use of nets on the project, and that he should have been permitted to cross-examine the Hartz defendants' expert on this issue. The trial judge ruled that this constituted evidence of subsequent remedial measures and, therefore, was inadmissible. The judge further noted that it could not be offered to undermine the assertion that nets were impracticable because the defense had never elicited such testimony from this expert, even though the expert had rendered such an opinion before trial.
We agree that the issue was interjected only by plaintiff's own questioning during cross-examination. We also note that before the trial judge sustained the objection to this line of questioning, the expert had testified that even if nets were later used on the site, he would not change his opinion that nets were impracticable and too costly.
Evid.R. 51, in effect at the time of trial, provided that evidence of subsequent remedial or precautionary measures may not be admitted to prove negligence. This rule was predicated on the public policy of encouraging subsequent remedial measures by ensuring that a person would not be penalized for taking steps to make a potentially dangerous situation more safe. Brown v. Brown, 86 N.J. 565, 580, 432 A.2d 493 (1981); Perry v. Levy, 87 N.J.L. 670, 672, 94 A. 569 (E. & A. 1915); Molino v. B.F. Goodrich Co., 261 N.J. Super. 85, 102, 617 A.2d 1235 (App.Div. 1992), certif. denied, 134 N.J. 482, 634 A.2d 528 (1993). In addition, the rule is based on the unreliability of inferring a defendant's admission of culpability because of such remedial measures. Brown v. Brown, supra, 86 N.J. at 580-81, 432 A.2d 493.
The current rule, N.J.R.E. 407, tracks Evid.R. 51, but further provides that subsequent remedial conduct may be admitted as to *148 other issues. This was always implicit in Evid.R. 51. See Brown v. Brown, supra, 86 N.J. at 581, 432 A.2d 493. Thus, evidence of subsequent remedial action has been admitted to show control over the injuring instrumentality, Perry v. Levy, supra, 87 N.J.L. at 672, 94 A. 569 and Manieri v. Volkswagenwerk A.G., 151 N.J. Super. 422, 431, 376 A.2d 1317 (App.Div. 1977), certif. denied, 75 N.J. 594, 384 A.2d 824 (1978); to impeach the credibility of a witness, Lavin v. Fauci, 170 N.J. Super. 403, 407, 406 A.2d 978 (App.Div. 1979); to prove the condition existing at the time of an accident, Millman v. U.S. Mortgage & Title Guar. Co., 121 N.J.L. 28, 34-35, 1 A.2d 265 (Sup.Ct. 1938); and to show that a feasible alternative for avoiding the danger existed at the time, Apgar v. Hoffman Constr. Co., 124 N.J.L. 86, 90, 11 A.2d 25 (E. & A. 1940).
The trial court perceived that plaintiff set up the issue by cross-examining defendant's expert as to his earlier opinion on feasibility in order to place before the jurors the subsequent use of safety nets on the site. See Biunno, New Jersey Rule of Evidence comment 2 on N.J.R.E. 407 (1993-1994) (citing Spinelli v. Golda, 6 N.J. 68, 78-79, 77 A.2d 233 (1950) (subsequent remedial repairs completed by landlord not admitted where there was no actual controversy about landlord's control of building and lease clearly disclosed the intention that tenant should maintain and control plate glass window which injured plaintiff)). The judge's exclusion of evidence as to the subsequent use of safety nets did not constitute an abuse of discretion in these circumstances. Even where subsequent remedial conduct evidence has relevance to some fact in issue other than negligence, it may be excluded if the prejudicial effect outweighs the probative value. N.J.R.E. 403; Molino v. B.F. Goodrich Co., supra, 261 N.J. Super. at 103, 617 A.2d 1235.
The evidence of the subsequent installation of nets, if admitted, had the potential for opening the door to jury knowledge of an OSHA citation or mandate. See Millison v. E.I. du Pont de Nemours, 226 N.J. Super. 572, 594-95, 545 A.2d 213 (App.Div. 1988), aff'd, 115 N.J. 252, 558 A.2d 461 (1989) and cases cited *149 therein (OSHA citations are the opinions of investigators and do not carry with them the indicia of reliability that is inherent in government-adopted safety standards). In addition, the location of any nets used at a later stage of the construction would have been an important factor as to the relevance of such evidence, and it was not clear as to where on the site the nets were later used.

V
Plaintiff maintains that under Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 177, 406 A.2d 140 (1979) and its progeny, the trial court erred in permitting the jury to consider the issue of plaintiff's comparative negligence. Suter was a strict liability action against a machine manufacturer for injuries sustained when an employee reached into a metal fabricating machine which did not have safety devices. Id. at 155-57, 406 A.2d 140. The Suter Court held: "Irrespective of the rationale that the employee may have unreasonably and voluntarily encountered a known risk, we hold as a matter of policy that such an employee is not guilty of contributory negligence." Id. at 167, 406 A.2d 140. The Court reasoned that an employee so situated "has no meaningful choice" but to use the machine, and thus could not be barred, nor suffer the reduction of any favorable verdict, by his contributory fault. Id. at 167-68, 406 A.2d 140. The Court, therefore, concluded that contributory negligence was not a "viable defense in a design defect case when plaintiff, an employee in an industrial setting, using the machine in an intended or reasonably foreseeable manner, is injured because of that defect, and in the absence of that defect the injury would not have occurred." Id. at 177, 406 A.2d 140.
In Green v. Sterling Extruder Corp., 95 N.J. 263, 471 A.2d 15 (1984), the Court extended Suter to negligence actions against product manufacturers by injured employees. Id. at 271-72, 471 A.2d 15. The Court held that the defense of contributory negligence should be barred in negligence actions founded on product *150 defects for precisely the same reasons it was barred in strict liability actions. Ibid.
Suter stated that it was not passing upon other, nonfactory, situations where an employee may similarly be held to have had no meaningful choice. Suter, supra, 81 N.J. at 167 n. 5, 406 A.2d 140. Its rule has been extended to cover accidents involving equipment other than plant machinery. See Tirrell v. Navistar Int'l Inc., 248 N.J. Super. 390, 401, 591 A.2d 643 (App.Div.), certif. denied, 126 N.J. 390, 599 A.2d 166 (1991) (holding Suter applicable to products liability action involving an employee killed by tractor-trailer which had no backup-up alarm, because suit proceeded under Products Liability Act which covered all workplace injuries). See also Crumb v. Black & Decker (U.S., Inc.), 204 N.J. Super. 521, 527, 499 A.2d 530 (App.Div.), certif. granted, 102 N.J. 386, 508 A.2d 247 (1985), appeal dismissed, 104 N.J. 432, 517 A.2d 425 (1986) (recognizing possibility that Suter's prohibition against use of contributory negligence defense might apply where employee was using his own tool at direction of employer). However, no decision has applied the Suter rule to a workplace injury not caused by a defective machine or product.
It is well established that an employee's contributory negligence is generally available as a defense when the employee sues a third person in an ordinary negligence action. See 2B Larson's Workmen's Compensation Law, § 75.21 at 14-572 (1989). Further, plaintiff being a member of the workforce, with all the compulsions attendant to that status, is a factor which is subsumed in the jury's analysis of whether he acted prudently, and the jury may be so instructed. See McGrath v. American Cyanamid Co., 41 N.J. 272, 275, 196 A.2d 238 (1963) (a man who must work to live is not necessarily negligent whenever he continues to work after learning of a hazard; the inquiry is whether he failed to use the care of a reasonably prudent person under all of the circumstances either in incurring the known risk (i.e., staying on the job) or in the manner in which he proceeded in the face of that risk). In addition, plaintiff would not be barred from recovery by virtue of *151 contributory negligence if "such negligence was not greater than the negligence of the person against whom recovery is sought or was not greater than the combined negligence of the persons against whom recovery is sought." N.J.S.A. 2A:15-5.1. We, therefore, find no compelling reason to extend the limits of the Suter rule, absent a legislative mandate.
In light of our reversal of the judgment and grant of a new trial as to all respondents, we find no need to consider plaintiff's remaining allegations of error.
Reversed and remanded.
NOTES
[1] Citing Restatement (Second) of Torts, § 847A at 65 (Tentative Draft No. 23, April 1977).