151 N.J. Super. 312 (1977)
376 A.2d 1261
RONALD G. BORTZ AND BARBARA BORTZ, HUSBAND AND WIFE, PLAINTIFFS-APPELLANTS,
v.
CHESTER RAMMEL, MAURICETOWN FIRE COMPANY, SMITH & RICHARDS LUMBER COMPANY, A NEW JERSEY CORPORATION, COMMERCIAL TOWNSHIP (CUMBERLAND COUNTY), WARREN HOLLINGER, RICHARD POLHAMUS, CONCORD FABRICATORS, A NEW JERSEY CORPORATION, KENNETH CLARK, WALTER SHARP AND FREDERICK H. HANDT, JR., DEFENDANTS AND THIRD PARTY PLAINTIFFS,
v.
TRUSWAL SYSTEMS, INC., A CORPORATION OF CALIFORNIA AND ISAAC SHEPPARD, JR., P.E., THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1977.
Decided July 1, 1977.
*314 Before Judges FRITZ, ARD and PRESSLER.
Mr. Sheldon C. Schulman argued the cause for appellants (Messrs. Tuso and Gruccio, attorneys; Mr. Sheldon C. Schulman on the brief).
Mr. Lewis B. April argued the cause for respondent Chester Rammel (Messrs. Cooper, Perskie, Neustadter & Katzman, attorneys; Mr. Lewis B. April and Ms. Mary M. Reiss on the brief).
Mr. Ernest F. Picknally argued the cause for respondents Mauricetown Fire Company, Walter Sharp and Frederick H. Handt, Jr. (Messrs Schuenemann, Gercke & Picknally, attorneys; Mr. Ernest F. Picknally on the brief).
Mr. J. Peter Davidow argued the cause for respondent Smith & Richards Lumber Company.
Mr. Mark Soifer argued the cause for defendants-respondents, Commercial Township and Warren Hollinger (Messrs. Horn, Weinstein & Kaplan, attorneys; Mr. David A. Spitalnick of counsel and on the brief).
Mr. James E. Franklin II argued the cause for respondent Concord Fabricators (Messrs. Lloyd, Megargee, Steedle & Connor, attorneys; Mr. James E. Franklin II on the brief).
Mr. Barry A. Perlow argued the cause for respondent Kenneth Clark (Messrs. Horuvitz, Perlow & Ritter, attorneys; Mr. Barry A. Perlow on the brief).
*315 Mr. Martin L. Pagliughi submitted a letter in lieu of brief for Isaac Sheppard, Jr., P.E., third party defendant (Messrs. Adamo & Pagliughi, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
This is a personal injury action brought by plaintiffs Ronald G. Bortz and his wife Barbara Bortz, who sued per quod, seeking recovery for the serious injuries sustained by plaintiff husband in a building construction accident. The action, which is based on a variety of negligence, strict liability in tort and warranty theories, names ten separate defendants, each of whose conduct is alleged to have substantially contributed to the accident. Summary judgments were entered dismissing the complaint as to all defendants and plaintiffs appeal.
According to the substantially undisputed facts appearing from the pleadings, pretrial order, experts' reports[1] and transcripts of extensive pretrial depositions, plaintiff was an employee of one Harold Orr, a carpenter and roofer, against whom he has successfully concluded a workers' compensation action arising out of this accident. Orr had been retained by defendant Chester Rammel, a general contractor, to erect an open-span A-frame roof on the new firehouse that Rammel was constructing for the defendant Mauricetown Fire Company. The sketchy plans and specifications for the firehouse on the basis of which construction was to proceed and on the basis of which a building permit was issued by defendant Warren Hollinger, building inspector of defendant *316 Commercial Township, were not prepared by either a licensed architect or licensed engineer, but rather by one of the firemen, defendant Walter Sharp. It is conceded that these plans and specifications were so minimal in nature as not to have conformed with even the most basic requirements of any recognized building construction code, including the B.O.C.A. code, which was in effect in the township. It is further undisputed that Orr, having been informed by Rammel that an A-frame roof was desired, himself conceived of the precise manner and detail of its construction, deciding upon the use of approximately 34 prefabricated triangular wooden trusses, each some 65 feet in length and 14 feet in height, to constitute the frame of the roof. Orr ordered the trusses from his regular supplier, defendant Smith & Richards Lumber Co., which, since it did not itself fabricate or stock this item nor have any substantial experience therewith, ordered them for Orr from defendant Concord Fabricators (Concord). Concord, in turn fabricated the trusses in accordance with the general specifications supplied by third-party defendant Truswal Systems, Inc. (Truswal), which was also the manufacturer and supplier of a metal plate that was an integral part of the completed wooden truss. The truss specifications had been designed by Truswal's engineer, third-party defendant Isaac Sheppard, Jr.[2] The trusses, in order to be erected, had to be raised to the roof level, and for this purpose Orr had retained the service of defendant Kenneth Clark, a crane operator.
The operation of raising the trusses and securing them in place was a time-consuming undertaking. On the first day devoted to this enterprise, eight trusses were placed and permanently braced by the use of plywood sheeting. On the *317 second day some 18 to 20 trusses had been placed before the accident occurred, of which approximately the first half had been temporarily but inadequately braced and the second half had not been braced at all, resulting in the untoward instability of the entire second day's addition to the structure. The accident occurred when a strong gusty wind suddenly arose just after the eighteenth or twentieth truss had been raised and placed, creating a falling domino effect in which truss after truss collapsed, causing plaintiff, who was in the process of nailing the trusses, to be thrown to the ground. He survived the impact but was rendered a paraplegic.
Certain other salient and undisputed facts are here critical. Although there were no written agreements, it is clear that Rammel was functioning as the general contractor and that it was he who selected Orr, with whom he had frequently worked in the past, as the roofing subcontractor. It is also inferable that Rammel was as fully knowledgeable as Orr regarding the mechanics of erecting the trusses, and it was in fact Rammel who completed the roof after the accident. It is further noted that the first day's work remained fully intact despite the accident and was incorporated into the final roof, and also that Rammel, in completing the roof, used the remaining trusses originally delivered to the job but not yet placed on the building when the accident occurred. Orr himself had previously worked with Clark, the crane operator, who was obviously acting as Orr's subcontractor. All of them, Rammel, Orr and Clark, had had substantial experience in the general type of work which each respectively had undertaken in this construction.
Finally, and of greatest significance, it is not disputed that had the trusses been properly and adequately braced as they were being raised and placed on the second day, they would have withstood the unexpected wind force and the accident would never have taken place. In this regard it is also undisputed that Orr fully appreciated the nature of the materials he was working with, the need for proper bracing as the work progressed, the resultant instability and vulnerability of *318 the work-in-progress without proper bracing, and the fact that he was not properly bracing the trusses as they were being placed. The inescapable inference is that because he had hired Clark by the hour, and because proper bracing of the trusses as they were raised would have substantially increased the time interval between the raising of one truss and the next, and because the weather was calm and the danger seemed, therefore, minimal, Orr took the calculated risk of reducing his costs by planning to raise all of the trusses first and adequately securing them later. Had there not been the abrupt and unexpected weather change in the middle of the job, his plan would no doubt have succeeded. Tragically for plaintiff, it did not.
Against this background of undisputed fact, it was essentially the conclusion of the trial judge that, questions of breach of duty legally owed notwithstanding, the alleged culpable conduct of none of the parties to this action could reasonably be deemed to have been a substantial factor in bringing this accident about. For the reasons herein stated, we are constrained to agree as to all defendants except Rammel, the general contractor. We therefore affirm the summary judgments entered as to all other defendants and reverse the summary judgment entered in his favor and remand for trial. In so doing, we are fully aware of the nature and extent of the burden of the moving parties to have excluded the reasonable possibility of a genuine dispute of material fact. R. 4:46-2. And see the now classic statement of Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-77 (1954). We are, however, satisfied that all but Rammel succeeded in carrying this burden. [The court here considered whether any of the defendants, other than Rammel, could be held liable and determined that the trial judge was correct in granting summary judgment dismissing of the complaint against them.]
We come now to a consideration of the claims against the general contractor, Chester Rammel, which in our view were improperly disposed of on his summary judgment motion. *319 The basis of the trial judge's action was the principle expressed by this court in Wolczak v. National Electric Products Corp., 66 N.J. Super. 64 (App. Div. 1961) to the effect that
Absent control over the job location or direction of the manner in which the delegated tasks are carried out, the general contractor is not liable for injuries to employees of the subcontractor resulting from either the condition of the premises or the manner in which the work is performed. [at 71]
While it appears that this principle may be applicable to the undisputed facts here, we nevertheless regard the principle itself as having been substantially qualified by subsequent legislative action. In 1962, the year following the restrictive decision in Wolczak, the Legislature adopted the Construction Safety Act, N.J.S.A. 34:5-166 et seq., expressly designed to protect the health and safety of all construction employees as well as the public in general by requiring all construction employers to comply with all safety rules and regulations promulgated under the act. N.J.S.A. 34:5-168. Such rules and regulations were consequently promulgated under the statutory grant of authority by the Commissioner of Labor and Industry and codified as the Construction Safety Code, N.J.A.C. 12:180-1.1 et seq.
Of primary importance here is the provision of N.J.A.C. 12:180-3.15.1, mandating that
Where one contractor is selected to execute the work of the project, he shall assure compliance with the requirements of this Chapter from his employees as well as all subcontractors.
Among the general safety requirements of that chapter of the Code are N.J.A.C. 12:180-3.1 and N.J.A.C. 12: 180-3.2, providing respectively as follows:
All places where employees are suffered or permitted to perform work of any kind in construction work or demolition work shall be so constructed, equipped, arranged, operated and conducted as to *320 provide reasonable and adequate protection to the lives, health and safety of employees and the general public.
Employers, owners, contractors, subcontractors, superintendents or foremen in charge, and other persons obligated by law shall not direct, or permit an employee to work under conditions which are not in compliance with this Chapter or which are prohibited by this Chapter.
The specific provision of the Code here applicable is N.J.A.C. 12:180-4.15, stipulating that
No wall, chimney or other structure or part of a structure shall be left unguarded in such condition that it may fall, collapse or weaken due to wind pressure or vibration.
It is evident, therefore, that the facts here could support a conclusion that Rammel, as the general contractor, had a statutory obligation to take the necessary steps to insure the safety of Orr's employees and that he failed to do so. In reaching the conclusion that Rammel failed to comply with the standard of conduct imposed upon him by legislation and its implementing administrative regulations, a jury could appropriately consider whether Rammel knew or should have known of the proper safety procedures which, had they been followed by the subcontractor, would have prevented the accident here. Actual knowledge on the part of Rammel might well be inferred from the fact that it was he who subsequently and properly completed the roof construction. From such a determination the jury could reach a conclusion of actionable negligence.
We are satisfied that the Construction Safety Act and the Construction Safety Code promulgated thereunder have, therefore, a substantial impact on the continued viability of our quoted holding in Wolczak, supra. It is first well settled in this jurisdiction that proof of deviation from a statutory standard of conduct, while not conclusive on the issue of negligence in a civil action, is nevertheless a relevant circumstance to be considered by the trier of fact in assessing tort liability. Braitman v. Overlook Terrace *321 Corp., 68 N.J. 368, 385-386 (1975); Ellis v. Caprice, 96 N.J. Super. 539, 553-554 (App. Div. 1967); certif. den. 50 N.J. 409 (1967). We are, moreover, impressed with the recent draft formulation of the American Law Institute, which in appropriate circumstances would accord a right of action in tort to a member of a class sought to be protected by a standard of conduct prescribed by legislative provision. As stated in Restatement, Torts 2d, § 874A at 65 (Tentative Draft No. 23, April 1977)
When a legislative provision proscribes or requires certain conduct for the benefit of a class of persons but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.
And see the accompanying Comments, most particularly, Comment (h), suggesting that the "primary test for determining whether the courts should provide a tort remedy for violation of the legislative provision is whether this remedy is consistent with the legislative provision, appropriate for promoting its policy and needed to assure its effectiveness."
We are persuaded not only as to the supporting rationale of § 874A but also that the multi-faceted test governing its application is here met. It was obviously the legislative intention to ensure the protection of all of the workers on a construction project, irrespective of the identity and status of their various and several employers, by requiring, either by agreement or by operation of law, the designation of a single repository of the responsibility for the safety of them all. The assurance of prospective and continuing compliance by that repository with his responsibility demands, in our view, a right of tort action in those who are injured when there is a failure of compliance. Cf. Doloughty v. Blanchard Constr. Co., 139 N.J. Super. 110, *322 123-125 (Law Div. 1976). We therefore base plaintiffs' right of action not only on a traditional negligence theory with a statutory mandate providing the source of the legal duty, but also on the policy and rationale of the draft Restatement section.
Since there will be a trial of this action against one of the parties, we make these following observations: First, we are of the view that for the reasons herein expressed the viability of plaintiffs' cause of action against Rammel does not, on this record, revive Rammel's third-party complaint against Truswal and Sheppard, whose legal position here is virtually the same as that of Concord Fabricators and Smith & Richards Lumber Co. Furthermore, with respect to any cross-claim which Rammel might assert against Orr, we are satisfied that the principles stated in Ruvolo v. U.S. Steel Corp., 139 N.J. Super. 578 (Law Div. 1976), control.
Affirmed as to all defendants except Chester Rammel. Reversed as to defendant Rammel and remanded for trial.
NOTES
[1] Plaintiffs submitted two experts' reports. The second, the so-called Fogel report, was not submitted until summary judgment had already been entered against all defendants, but one and was relied on by plaintiffs in resisting the summary judgment motion of the last of the defendants as well as on their own motion for rehearing of the successful motions of all of the others. Although the report was objected to as untimely by all defendants, the court below apparently considered it, and since we do not regard it as materially affecting the ultimate result, we do not pass upon the trial court's alleged abuse of discretion in not disregarding it.
[2] The third-party complaints were dismissed by the court without prejudice following the entry of summary judgment in favor of defendants-third party plaintiffs. It does not appear that plaintiffs had amended their complaints to make a direct claim against either Truswal or Sheppard, and consequently the question of their liability to plaintiffs was not considered below.