735 A.2d 1180 (1999)
324 N.J. Super. 437
Michael J. COSTANTINO and Patricia Costantino, Plaintiffs-Appellants,
v.
Louis VENTRIGLIA, an individual; Louis Ventriglia & Sons, a business entity, and Anthony Sansone, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 10, 1999.
Decided September 2, 1999.
*1181 Brian C. Matthews, Roseland, for plaintiffs-appellants (McCormack & Matthews, attorneys, Mr. Matthews, on the brief).
Jeffrey M. Kadish, Livingston, for defendants-respondents (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys, Mr. Kadish, of counsel and on the brief and Heidi P. Rubin Cohen, on the brief).
Before Judges STERN, BRAITHWAITE and WECKER.
The opinion of the court was delivered by WECKER, J.A.D.
Plaintiff, Michael J. Costantino,[1] was injured while working as an employee of BelleMead Construction Corporation, the general contractor on a construction project. Defendants are Louis Ventriglia individually, Louis Ventriglia & Sons, arguably a subcontractor or supplier to BelleMead, (collectively "Ventriglia") and Ventriglia's employee, Anthony Sansone. Sansone was operating Ventriglia's equipment, digging a hole where plaintiff was working, when the hole collapsed on plaintiff. The jury returned a verdict of no negligence. This appeal involves the *1182 proper use of OSHA standards of care as evidence in a negligence action. Because we conclude that the jury received incorrect instructions that may have contributed to an unjust result, we reverse and remand for a new trial. See R. 2:10-2.
As in Kane v. Hartz Mountain Industries, 278 N.J.Super. 129, 142, 650 A.2d 808 (App.Div.1994), aff'd o.b., 143 N.J. 141, 669 A.2d 816 (1996), "the judge's charge appears to have been a hybrid between a general negligence standard and one requiring a finding of a regulatory violation." In charging the jury, the court correctly defined negligence as the failure to exercise that degree of care for the safety of others which a person of ordinary prudence would exercise under similar circumstances. The court also charged the jury that evidence had been produced regarding construction standards in the industry, and that such evidence could be considered in determining whether defendants had a duty to protect the trench. Those charges were appropriate. The court also told the jury that plaintiffs claimed that defendants breached a duty of reasonable care and violated their obligations under OSHA. However, the order and juxtaposition of those charges were confusing and deprived plaintiff of a fair trial.
The relevant portion of the jury charge follows:
In this case, in support of the charge of negligence made by the plaintiffs, the plaintiff asserts that the defendants violated a provision of the Occupational Safety and Health Act, OSHA. Specifically he charges that Ventriglia was a subcontractor, as that term is defined in OSHA, and therefore had the duty to protect the trench if it was over five feet, as provided in the OSHA regulations.
Now, OSHA has set up a standard of conduct for the safety and other various endeavorsfor various endeavors, including the construction industry. However, the determination of whether the defendant is a subcontractor subject to the OSHA regulations dependsis a question of both law and of fact. The fact to be determined is the nature of the relationship between Ventriglia and the general contractor Bellemeade. The statute defines a subcontractor, who is one who has contracted to do a part of the work. In this case, the defendants assert that the defendant was not a subcontractor, that he merely was a lessor of the back hoe in question, with its operator. That the operator wasthe back hoe and the operator were released about an hour a day to do any work directed by Bellemeade site's superintendent, Mr. McCracken.

If you find that Ventriglia was merely a lessor of such equipment with an operator on such basis, then you will find that he was not a subcontractor as that term is defined in the act. In effect, I am charging you that if you so find such a person is not, as a matter of law, a subcontractor under OSHA, and therefore is not required to comply with OSHA. If, however, you find that defendant was a subcontractor; namely, someone who was obligated by contract to do a part of the work, as that term is used in OSHA, then you may consider whether a defendant violated the OSHA requirements which were testified to by the various witnesses. If you would find that he violated such OSHA requirements, then I would charge you in respect to the effect of such a finding.
Whereas here the charge of negligence made is asserted by reason of the defendants having violated a provision of OSHA, you may consider that as some evidence of negligence. The statute in question has set up a standard of conduct for the safety in the construction industry. If you find that the defendant has violated that standard of conduct, such violation is evidence to be considered by you in determining whether negligence, as I have defined that term to you, has been established. *1183 You may find that such violation constituted negligence on the part of the defendants, or you may find that it did not constitute such negligence. Your finding on this issue maybe [sic] based on such violation alone, but in the event there is other or additional evidence bearing on that issue, you will consider such violation together with all such additional evidence in arriving at your ultimate decision as to defendant's negligence.

[Emphasis added].
We are convinced that these instructions, viewed as a whole, may have prevented the jury from considering the OSHA regulation as evidence of the standard of care applicable to defendants under general negligence principles, irrespective of whether Ventriglia was a "subcontractor" and subject to OSHA regulation and enforcement. The charge thus had the potential for leading the jury to an unjust result. See Feldman v. Lederle Labs., 132 N.J. 339, 345-46, 625 A.2d 1066 (1993).
We recognize that plaintiff contributed substantially to the confusion in the way the case was presented to the jury. By seeking to prove that Ventriglia was a "subcontractor" subject to OSHA regulations, plaintiff apparently sought the advantage of instructing the jury that the OSHA regulation established the required standard of care; that defendants did not follow the standard; and that the OSHA violation is evidence of negligence. As we shall explain, under general negligence principles, the OSHA regulatory standard is merely evidence of the applicable standard of care. Having chosen to offer the jury the opportunity to consider an alleged OSHA violation as evidence of negligence, plaintiff took on the burden of proving that Ventriglia was actually subject to OSHA regulations, and defendant focused on disproving OSHA's application. Nevertheless, the judge erred in asking the jury to answer the question whether Ventriglia was a subcontractor subject to OSHA regulationsa legal question for the court and in relying on the attorneys' descriptions of those regulations, which the parties failed to supply.
The parties' undue emphasis on the question whether Ventriglia was a "sub-contractor" under OSHA apparently contributed to the judge's decision to charge the jury that if Ventriglia was not a sub-contractor, it was not bound by the OSHA standard. Even if that statement was literally accurate, in the sense that OSHA could not impose administrative sanctions upon Ventriglia, the instruction incorrectly implied that if OSHA had no jurisdiction over Ventriglia, the OSHA standard would be irrelevant to the standard of care Ventriglia owed to plaintiff.
The judge failed to charge the jury expressly, as he indicated in the charge conference that he would, that
[T]he defendants are charged with the duty of reasonable care under the circumstances, that is, with respect with what they did. The defendant's conduct must be compared with the conduct of a reasonably prudent person digging a trench under the circumstances in this case. You may consider the testimony in regard to general customs and standards in the construction industry in determining whether or not the defendants did [not] act with reasonable care and therefore were negligent.
OSHA regulations have long been admissible as evidence of an industry standard for safety. See Kane v. Hartz Mountain, 278 N.J.Super. at 141-42, 650 A.2d 808; Smith v. Kris-Bal Realty, Inc., 242 N.J.Super. 346, 352, 576 A.2d 934 (App.Div.1990); Sanna v. National Sponge Co., 209 N.J.Super. 60, 69, 506 A.2d 1258 (App.Div. 1986). Plaintiff was entitled to have the jury consider plaintiff's expert's reliance on the OSHA standards to demonstrate the construction industry standard of care, even though Ventriglia may not have been subject to OSHA regulations or jurisdiction.
*1184 Defendant's expert did not dispute the OSHA standard. Plaintiff was entitled to rely upon an accepted standard in the construction industrythat holes or trenches deeper than five feet must be shoredto convince the jury, through an expert, that these defendants had deviated from the applicable standard of care under general negligence principles. By allowing the jury to conclude that it should ignore that standard if it found that defendants merely supplied equipment and operator to the site, the court improperly limited plaintiff's opportunity to prove negligence.
In his direct testimony, plaintiff's expert offered opinions cast almost exclusively in terms of compliance with OSHA, thereby inviting defendants to establish that they were not subject to the regulatory jurisdiction of OSHA. However, both plaintiff's and defendant's experts testified that OSHA requires that a hole or trench that is five or more feet deep either must be shored up, or the walls constructed at an angle to prevent collapse. The record strongly supports the conclusion that this hole was more than five feet deep, and defendant's expert agreed that the common law standard of care requires the kind of safety measures spelled out by OSHA.[2]
The trial judge recognized that defendants were subject to general negligence law, and expressed his intention to charge the jury accordingly. However, he did not do so. The actual jury instructions may have prevented the jury from considering the OSHA safety standards relied upon by plaintiff's expert to establish a standard of care. New Jersey law has consistently allowed OSHA standards to be considered for that purpose, even where the allegedly negligent party is not subject to regulation or enforcement by OSHA. See, e.g., Sanna v. National Sponge Co., 209 N.J.Super. at 69, 506 A.2d 1258:
[B]ecause the case must be retried, we observe that federal Occupational Safety and Health Administration Standards may have been relevant and perhaps violated in this situation.... Even if not specifically applicable in the regulatory context of this accident, a question which is not before us and which we do not decide today, the standards expressed in the OSHA regulations may be recognized and accepted as objective safety standards and practices generally prevailing in the community if appropriate expert or other testimony so develops. McComish v. DeSoi, 42 N.J. 274, 282, 200 A.2d 116 (1964).
[Additional citations and footnote omitted].
In this case, plaintiff's expert referred without objection to the OSHA regulation as a basis for establishing the appropriate standard of care for these defendants. As we said in Smith v. Kris-Bal Realty, Inc., 242 N.J.Super. at 352-53, 576 A.2d 934:
While plaintiff here enjoyed the status of a business invitee of both the marina and the owner of the fishing trawler at the time of his accident, and was not an employee laboring at his workplace, safety standards targeted specifically for the protection of workers getting on and off vessels were not totally irrelevant to the reasonable standard of care owed to him.

...
[P]laintiff's expert could, under the doctrine of McComish v. DeSoi, properly rely on OSHA standards in explaining his conclusions on the duty of care.

[Citations omitted].
This conclusion is consistent with established precedent allowing industry standards as evidence of a standard of care. See McComish v. DeSoi, 42 N.J. 274, 200 A.2d 116 (1964) (manuals properly admitted as safety codes):

*1185 [A] safety code ordinarily represents a consensus of opinion carrying the approval of a significant segment of an industry. Such a code is not introduced as substantive law, as proof of regulations or absolute standards having the force of law or of scientific truth. It is offered in connection with expert testimony which identifies it as illustrative evidence of safety practices or rules generally prevailing in the industry, and as such it provides support for the opinion of the expert concerning the proper standard of care.

[Id. at 282, 200 A.2d 116].[3]
The same rationale required this jury to be instructed on general negligence principles, and that the OSHA regulation was an available but not a required standard of care against which to measure defendants' conduct. See also Perez v. Wyeth Laboratories, Inc., 161 N.J. 1, 24, 734 A.2d 1245 (1999) ("FDA regulations are pertinent in determining the nature and extent of any duty of care that should be imposed on pharmaceutical manufacturers with respect to direct-to-consumer advertising"); Dixon v. Jacobsen Mfg. Co., 270 N.J.Super. 569, 582, 637 A.2d 915 (App.Div.), certif. denied, 136 N.J. 295, 642 A.2d 1004 (1994) (ANSI standards for snow thrower admissible).
Our research in the case law of other jurisdictions reveals a split of authority on the question whether OSHA regulations are admissible in evidence even where they do not directly apply to the parties in the case. The majority favors admissibility. See, e.g., Rolick v. Collins Pine Co., 975 F.2d 1009, 1013 (3d Cir.1992), cert. denied, 507 U.S. 973, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993) (applying Pennsylvania law):
The issue to be decided here is whether the OSHA regulation is admissible in a diversity action as evidence of the standard of care owed by the defendants to the plaintiff, not whether the OSHA itself controls that issue.
Sprankle v. Bower Ammonia & Chemical Co., 824 F.2d 409, 416-17 (5th Cir.1987) (excluding the OSHA regulation as evidence was not an abuse of discretion, where defendant was not subject to OSHA, and plaintiff's expert was permitted to refer to the regulation as a foundation for his opinion about due care); Miller v. Chicago & North Western Transp. Co., 925 F.Supp. 583, 588 (N.D.Ill.1996) (although defendant was not subject to OSHA regulation, which had been preempted by Federal Railroad Administration standards, plaintiff's expert could rely on the OSHA standard to support his testimony describing the appropriate standard of care); Thoma v. Kettler Bros., Inc., 632 A.2d 725, 729-30 (D.C.App. 1993) (plaintiff who is not intended beneficiary of OSHA regulation may use OSHA regulation as evidence of standard of care); Hagan v. Gemstate Mfg., Inc., 328 Or. 535, 982 P.2d 1108 (1999) (OSHA regulation can be considered as evidence, similar to industry practice); Wal-Mart Stores, Inc. v. Seale, 904 S.W.2d 718, 720 (Tex.App.) appeal dismissed, 1995 WL 654562 (1995) (court has discretion to allow OSHA safety standard even where plaintiff is not an employee); Ball v. Melsur Corp., 161 Vt. 35, 633 A.2d 705, 711-12 (1993) (OSHA regulation is admissible for standard of care, even if OSHA does not establish existence of a duty). But see McKinnon v. Skil Corp., 638 F.2d 270, 275 (1st Cir. 1981); Brantley v. Custom Sprinkler Sys., Inc., 218 Ga.App. 431, 461 S.E.2d 592, 593 (1995); Knapstad v. Smith's Management Corp., 774 P.2d 1, 2-3 (Utah Ct.App.1989).
In our view, although Ventriglia's status in relation to the job may be determinative of OSHA's jurisdiction over it, the absence of jurisdiction does not mean that defendant owes no duty of due care to plaintiff. General negligence principles control. In Alloway v. Bradlees, *1186 Inc., 157 N.J. 221, 723 A.2d 960 (1999), decided two weeks before argument in this case, the Court reversed a summary judgment in favor of defendants and cited Kane for the proposition that "general negligence principles," rather than strict categorical analysis, govern tort claims involving worker safety issues. 157 N.J. at 235, 723 A.2d 960. The Court reaffirmed Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 625 A.2d 1110 (1993), Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 694 A.2d 1017 (1997), and Carvalho v. Toll Brothers & Developers, 143 N.J. 565, 675 A.2d 209 (1996), each holding that general negligence principles govern in circumstances previously governed by categorical analysis. 157 N.J. at 230, 723 A.2d 960. As in Alloway, we are satisfied that
The combination of these several factorsthe foreseeability of harm, the relationship between the parties, and the opportunity and capacity to take corrective actionstrongly supports the imposition of a duty of reasonable care on [the general contractor] to assure the safety of plaintiff on the work site as a matter of fairness and sound policy.

[157 N.J. at 233, 723 A.2d 960].[4]
There can be no dispute that Ventriglia owed plaintiff a duty of care. The dispute for this jury to resolve was the nature of the required care. There is substantial evidence in the record that the hole that collapsed on plaintiff was more than five feet deep, that Sansone knew the walls were not shored or angled, and that he gave plaintiff the signal that it was safe to enter the hole. In light of the strong evidence of negligence, we conclude that the jury may have believed it could not consider the OSHA regulation as evidence of the care that a reasonable person in Sansone's position would have taken. Since that regulation was the only source of the standard of care offered by plaintiff's expert, an implied instruction to ignore that standard could well explain the jury's verdict.
The common law duty of care is separate and apart from any duty to abide by OSHA regulations. Violation of an OSHA regulation by a party subject to its jurisdiction is, at most, some evidence of negligence, not negligence per se. See Alloway, 157 N.J. at 236, 723 A.2d 960:
OSHA regulations are pertinent in determining the nature and extent of any duty of care. We find applicable in the circumstances of this case the well-established principle that the violation of a legislated standard of conduct may be regarded as evidence of negligence if the plaintiff was a member of the class for whose benefit the standard was established.
See also Kane, 278 N.J.Super. at 144, 650 A.2d 808. Conversely, compliance with OSHA does not preclude a finding of negligence. Kane, supra, 278 N.J.Super. at 142, 650 A.2d 808. Neither of those propositions resolves the issue before us.
Defendant relies on Alloway for the proposition that an OSHA violation is evidence of negligence only where "the regulations are applicable to the defendant and... plaintiff is an individual intended to be protected by the regulations." That may be so. But the Court in Alloway describes with approval our observation in Kane "that the common-law duty of a general *1187 contractor to assure the safety of its subcontractors' employees is not necessarily identical to the duty that arises from a general contractor's duty to comply with an OSHA regulation." Alloway, 157 N.J. at 237, 723 A.2d 960, citing Kane, 278 N.J.Super. at 142, 650 A.2d 808.
As we said in Kane, OSHA "dictate[s] that the prime contractor and any subcontractors are responsible jointly for any failure to comply with OSHA safety standards...." 278 N.J.Super. at 141-42, 650 A.2d 808, and "the primary contractor and each tier of subcontractor [is] responsible for the safety of the workers under them on general negligence principles." Id. at 143, 650 A.2d 808. Application of negligence principles is consistent with our prior statement in Bortz v. Rammel, 151 N.J.Super. 312, 322, 376 A.2d 1261 (App. Div.1977), describing the basis for a plaintiff's cause of action as "traditional negligence theory with a statutory mandate providing the source of the legal duty...." 151 N.J.Super. at 322, 376 A.2d 1261. "`[P]roof of deviation from a statutory standard of conduct, while not conclusive on the issue of negligence in a civil action, is nevertheless a relevant circumstance to be considered by the trier of fact in assessing tort liability.'" Alloway, 157 N.J. at 236, 723 A.2d 960 (quoting Bortz, 151 N.J.Super. at 320, 376 A.2d 1261).
We do not read Alloway to change existing law: that an expert may rely on OSHA regulations, just as an expert may rely on industry standards, to support an opinion about the appropriate standard of care owed by any reasonable person in the defendant's position. Facts relied upon by an expert witness "need not be admissible in evidence" "if of a type reasonably relied upon by experts in the particular field." N.J.R.E. 703.
Where a defendant is subject to an OSHA safety regulation, its duty to workers is established by law. Therefore proof that the defendant violated the regulation is evidence of a breach of duty, i.e., evidence of negligence. Even where a defendant is not subject to OSHA regulatory jurisdiction, general negligence principles apply. In that case the court first determines whether the defendant owes a duty to the injured plaintiff. The nature of that duty, that is, the applicable standard of care, then may be evidenced by the OSHA standard. In the former case the jury can be instructed that the defendant had a duty to follow the regulation, that the jury should determine whether the defendant violated the regulation, and if so, that it may consider that violation as evidence of negligence. In the latter case, the jury should be instructed that the defendant owed plaintiff a duty of due care, that the jury must decide what constitutes due care under the circumstances, and that the OSHA standard may be considered as evidence of the care required.
We recognize certain language in Alloway that could be read to restrict any use of OSHA standards unless the defendant is directly subject to OSHA regulations.[5] However, in the context of the rest of the Alloway opinion, and the precedent cited therein, we find no evidence that the Court intended to limit the existing rule that standards set forth in OSHA regulations, at least when incorporated in expert testimony, are a proper consideration for a jury in determining the applicable standard of care. Given the longstanding common law rule, as well as N.J.R.E. 703, we are satisfied that if the Court had intended *1188 so drastic a change in the law, it would have expressed that intention unequivocally.
We agree with plaintiffs' argument in Point VI that his vocational expert's testimony was unduly limited. The issue was whether plaintiff's vocational expert could testify that plaintiff was likely to suffer decreased earnings in the future on account of his probable future physical inability to continue to work as a laborer.
Plaintiff's vocational expert concluded, based on tests he administered to plaintiff, that plaintiff was an unskilled worker with no transferable skills. Plaintiff's doctor had concluded that, based on plaintiff's permanent injury, there was a reasonable medical probability that he would not be able to work as a construction laborer for the entire course of his normal work life. Therefore, the vocational expert concluded that given plaintiff's limited employment skills, he would suffer diminished earning capacity if he were forced to stop working as a construction labor and had to take a sedentary job.
The expert was prepared to testify, in accordance with his report, that plaintiff likely would suffer a ten percent decrease in his earning ability as a result of his injury. In addition, if his physical condition worsened to the point where he could no longer perform his job as a construction laborer, and if he were restricted to sedentary work, his loss of earning capacity would be even greater. The defense objected to this testimony for lack of foundation, in view of plaintiff's own testimony that he continued to work as a laborer following the accident.
Plaintiff relied upon his medical expert's testimony that there would come a time when plaintiff could no longer work as a laborer. He argued that one expert is allowed to rely on the opinion of another expert, Biunno, Current N.J. Rules of Evidence, comment 5 to N.J.R.E. 703, and that expert testimony about a probable future consequence is admissible even if the expert cannot say with precision when it will come about.
The court ruled that the vocational expert could not testify to plaintiff's likely loss of income if his condition worsened and he could no longer work as a laborer, because that was too speculative. Plaintiff contends that he should be allowed to present the expert's opinion with regard to plaintiff's reduced employability if he cannot work as a laborer. We agree.
An injured party has the right to recover damages for the prospective consequences of a tortious injury as long as there is a reasonable probability that such consequences will occur. Coll v. Sherry, 29 N.J. 166, 175-76, 148 A.2d 481 (1959); Dombroski v. Atlantic City, 308 N.J.Super. 459, 469, 706 A.2d 242 (App.Div.1998); Higgins v. Owens-Corning Fiberglas Corp., 282 N.J.Super. 600, 611-12, 660 A.2d 1252 (App.Div.1995). To recover for diminished earning capacity, the plaintiff must show that there is a reasonable probability that the injuries will impair his or her future earning capacity. An expert witness must be able to offer an opinion based on a reasonably probable prediction, and not a mere guess or conjecture. Myrlak v. Port Auth. of New York & New Jersey, 302 N.J.Super. 1, 9, 694 A.2d 575 (App.Div.), rev'd in part on other grounds, 157 N.J. 84, 723 A.2d 45 (1999); Dawson v. Bunker Hill, supra, 289 N.J.Super. at 323, 673 A.2d 847.
This prohibition against a "net opinion" bars expert testimony based on unfounded speculation or mere possibilities. Grzanka v. Pfeifer, 301 N.J.Super. 563, 580, 694 A.2d 295 (App.Div.1997), certif. denied, 154 N.J. 607, 713 A.2d 498 (1998); Dawson v. Bunker Hill, supra, 289 N.J.Super. at 323, 673 A.2d 847. We are satisfied that by holding the proffered testimony too speculative, the trial judge failed to recognize that the vocational expert was entitled to rely, as he did, upon the opinion of plaintiff's medical expert's. See N.J.R.E. 703. In Statham v. Bush, 253 N.J.Super. 607, *1189 602 A.2d 779 (App.Div.1992), a vocational expert testified that based on an interview with the plaintiff, on a review of the plaintiff's medical records, and on an employability assessment the expert prepared from published labor statistics, plaintiff was employable only in light or sedentary jobs. We concluded that the testimony was properly admitted since "[n]othing more is required" of an expert on this issue. Id. at 612-14, 602 A.2d 779. We reach the same conclusion here.
Plaintiff's remaining points on appeal are either moot or without merit. See R. 2:11-3(e)(1)(E).
We reverse and remand for a new trial.
NOTES
[1] Plaintiff Patricia Costantino's action is derivative. We shall refer throughout to "plaintiff" in the singular.
[2] Neither party has quoted or even cited the critical portion of the OSHA regulations. Both agree it exists.
[3] We need not determine in this case whether the OSHA regulation for shoring up holes or trenches of a certain depth would have been admissible as independent evidence of the applicable standard of care without expert testimony.
[4] In Alloway the initial question was whether the general contractor owed a duty of care to its subcontractor's employee, whereas here the issue is defendants' duty to an employee of the general contractor. The Court describes Alloway as an employee of a subcontractor who "provided both truck and driver to [the general contractor] on a per diem basis," much like the arrangement between these defendants and this plaintiff's employer. 157 N.J. at 226, 723 A.2d 960. Just as here, "the contractual relationship ... was not committed to writing." Id. Compare Beatty Equipment Leasing, Inc. v. Secretary of Labor, United States Dep't of Labor, 577 F.2d 534, 537 (9th Cir.1978) (drawing no conclusion from the fact that petitioner was labelled a materialman rather than a subcontractor where, for all relevant purposes, he functioned as a subcontractor on the job site in question).
[5] We refer to the following:

In sum, although OSHA issued a violation to Bernhard Excavating, and not to Pat Pavers, the failure by OSHA to find a violation against a particular party does not preclude a determination that the party nevertheless was subject to a duty imposed by OSHA regulations and that the standards prescribed by OSHA were violated. If it is determined that OSHA regulations are applicable to Pat Pavers under the circumstances, they may be considered in determining the standard of care that was owed plaintiff and whether that standard was breached.
[157 N.J. at 240, 723 A.2d 960 (emphasis added) ].