SYLLABUS

(This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.)

**Juan Morales-Hurtado v. Abel V. Reinoso** (A-5-19) (082293)

**(NOTE: The Court did not write a plenary opinion in this case. The Court affirms the judgment of the Appellate Division substantially for the reasons expressed in Judge Nugent's opinion, published at 457 N.J. Super. 170 (App. Div. 2018).)**

**Argued March 16, 2020 -- Decided April 16, 2020**

**PER CURIAM**

The Court considers the Appellate Division's determination that the cumulative effect of many errors deprived plaintiff Juan Morales-Hurtado of a fair trial.

Plaintiff filed a vehicular negligence claim against defendant Abel V. Reinoso. The Appellate Division's decision chronicles a number of errors that occurred during the parties' trial. See generally 457 N.J. Super. 170 (App. Div. 2018).

During his opening statement, defense counsel told the jury: "[a]s one might expect, not surprising in our litigious society, defendant . . . [is] claiming that he's injured." The Appellate Division concluded that counsel's reference to one's expectations in a litigious society was improper. The remark was not a statement of evidence, and it arguably was an impermissible appeal to prejudice. See id. at 191.

Defense counsel cross-examined plaintiff about when plaintiff came to the United States, his citizenship, whether he had been in the United States continually since his arrival, and his need for an interpreter. The Appellate Division determined that those questions raised the same concerns expressed in State v. Sanchez-Medina, 231 N.J. 452, 463 (2018), where the Court noted that "evidence of a defendant's undocumented immigration status could appeal to prejudice, inflame certain jurors, and distract them from their proper role in the justice system." The appellate court found that plaintiff's attorney did not open the door to those questions, which were irrelevant. The court noted that, even if the questions could be considered relevant, their probative value was substantially outweighed by the risk of undue prejudice. See 457 N.J. Super. at 192.

The Appellate Division also found irrelevant defense counsel's questions about the age of the passengers in plaintiff's car. Further, the appellate court reasoned that defense counsel's question to his own client about whether any of the passengers had sued him

1

undermined counsel's contention that he asked about the passengers' ages to establish their presence. The court also expressed concern that, although the trial court immediately struck the question about other suits, the instruction might have been inadequate to effectively blunt the risks of significant prejudice. See id. at 192-93.

Defense counsel cross-examined plaintiff about the airbags in plaintiff's car not deploying upon impact. The Appellate Division concluded that such evidence was inadmissible absent expert testimony and might have been misleading because there is no evidence airbags are engineered to deploy in rear-end accidents. See id. at 193.

The Appellate Division noted plaintiff's challenges to defense counsel's cross-examination of two of plaintiff's medical expert witnesses and provided guidance for the proceedings upon remand, including that the trial court should bar assertions by defense counsel conveying not-so-veiled opinions that one of plaintiff's witnesses was not credible and also bar defense counsel's cross-examination of another witness about a draft report unless defense counsel can contend that an exception to Rule 4:10-2(d)(1) applies here. The Appellate Division further concluded that the trial court should bar on retrial the cross-examination of one of plaintiff's witnesses about the concept of secondary gain. See id. at 194-96.

The Appellate Division indicated that defense counsel made an impermissible speaking objection during plaintiff's cross-examination of defendant, and provided relevant guidance. See id. at 196-97. The court also provided guidance relevant to plaintiff's arguments that defense counsel elicited hearsay medical evidence during his cross-examination of plaintiff's medical experts and continued his excoriation of plaintiff's doctors and plaintiff's attorney during his summation. See id. at 198-99.

Noting the disputed issue of causation, the Appellate Division found no error in the trial court's denial of plaintiff's motion for a directed verdict. See id. at 199-200.

Finally, the Appellate Division reversed the trial court's decision to exclude the opinion of Dianne Simmons-Grab, a certified life care planner. Id. at 200-04. Plaintiff's counsel sought to present Simmons-Grab as an expert witness at trial regarding the medical expenses that plaintiff is expected to incur over his lifetime. Simmons-Grab premised her opinion that addressed plaintiff's future medical needs on notations made in medical records and on handwritten responses to questionnaires that she had submitted to the offices of three of plaintiff's treating physicians.

The trial court found that Simmons-Grab's opinion was based on unreliable sources of information and excluded her testimony. The Appellate Division held that the trial court's decision to bar the expert testimony constituted error. Id. at 202-04. It stated that "[e]ven if some of the underlying information was somehow improperly considered by [Simmons-Grab], such was not a basis for the wholesale exclusion of her entire

2

opinion." Id. at 203-04. The Appellate Division did not rule on the admissibility of Simmons-Grab's opinion, leaving the ultimate determination to the trial court. Id. at 204.

The Appellate Division concluded that the cumulative effect of multiple errors and improprieties deprived plaintiff of a fair trial and of a verdict based on the merits of the parties' claims. The court found that plaintiff is entitled to a new trial on all issues.

The Court granted certification. 239 N.J. 407 (2019).

**HELD:** The judgment of the Appellate Division is affirmed substantially for the reasons expressed in that court's opinion. The Court comments briefly on the Appellate Division's reversal of the trial court's decision to exclude the opinion of Dianne Simmons-Grab and offers guidance for the trial court on remand in its role under N.J.R.E. 702 and N.J.R.E. 703 as the gatekeeper of expert witness testimony.

1. As the trial court observed, Simmons-Grab relied on medical records and questionnaires that she "prepared in detail . . . and submitted to the doctors for their markings and then sign off." Although the questionnaires were "purportedly filled out . . . by the medical providers," the court noted that "[t]he responses . . . by the medical providers were not certified," and there was no indication that each physician had offered an opinion to a reasonable degree of medical certainty within his area of expertise. Indeed, in deposition testimony presented at trial, one of the treating physicians whose opinion had been identified by Simmons-Grab as a basis for her opinion stated that although it was "possible" that plaintiff would need additional medical care in the future, he could not testify "within a reasonable degree of medical probability" that any such care would be needed. (p. 3)

2. In appropriate circumstances, an expert witness may rely on the opinion of another expert in a relevant field. That principle, however, does not obviate the need to demonstrate that the treating physician on whom the life care expert relies actually holds the opinion attributed to him or her, which can be accomplished by means of a report by the treating physician, his or her trial testimony, or other competent evidence. As in other settings, any expert's or treating physician's opinion on which the life care expert relies must be couched in terms of reasonable medical certainty or probability. In the event that plaintiff seeks to present the expert testimony of Simmons-Grab on remand -- and defendant challenges the reliability of that opinion -- the trial court should conduct a hearing pursuant to N.J.R.E. 104(c), and determine the question of admissibility in accordance with the standards prescribed by N.J.R.E. 702 and N.J.R.E. 703. (pp. 4-6)

**AFFIRMED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in this opinion.**

3

SUPREME COURT OF NEW JERSEY

A-5 September Term 2019

082293

Juan Morales-Hurtado,

Plaintiff-Respondent,

v.

Abel V. Reinoso and New Service, Inc.,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
457 N.J. Super. 170 (App. Div. 2018).

| Argued | Decided |
|---|---|
| March 16, 2020 | April 16, 2020 |

H. Lockwood Miller, III, argued the cause for
appellants (Goldberg Segalla, attorneys; H. Lockwood
Miller, III, and Leah A. Brndjar, on the briefs).

Martin S. Cedzidlo argued the cause for respondent
(Jae Lee Law, attorneys; Martin S. Cedzidlo, on the
brief).

Jonathan H. Lomurro argued the cause for amicus
curiae New Jersey Association for Justice (Lomurro
Munson Comer Brown & Schottland, attorneys;
Jonathan H. Lomurro and Abbott S. Brown, of
counsel, Christina Vassiliou Harvey, of counsel and
on the brief, and Alan J. Weinberg, on the brief).

1

The judgment of the Superior Court, Appellate Division is affirmed substantially for the reasons expressed in Judge Nugent's comprehensive opinion, reported at 457 N.J. Super. 170 (App. Div. 2018). We share the Appellate Division's view that "the cumulative effect of multiple errors and improprieties deprived plaintiff of a fair trial and of a verdict based on the merits of the parties' claims," and that he is entitled to a new trial. Id. at 204.

We briefly comment on the Appellate Division's reversal of the trial court's decision to exclude the opinion of Dianne Simmons-Grab, a certified life care planner. Id. at 200-04. Plaintiff's counsel sought to present Simmons-Grab as an expert witness at trial regarding the medical expenses that plaintiff is expected to incur over his lifetime. See ibid.

Simmons-Grab, who is not a physician or other health care provider, was clearly unqualified to opine on plaintiff's prognosis or to identify any medication, surgery, therapy, or other care necessary to treat his injuries over his lifetime. She premised her opinion that addressed plaintiff's future medical needs on notations made in medical records and on handwritten responses to questionnaires that she had submitted to the offices of three of plaintiff's treating physicians. Defendant sought to bar her opinion, and the

trial court considered the admissibility of that opinion in a hearing pursuant to N.J.R.E. 104(c).

The trial court found that Simmons-Grab's opinion was based on unreliable sources of information and excluded her testimony. As the court observed, the life care expert relied on medical records and questionnaires that she "prepared in detail . . . and submitted to the doctors for their markings and then sign off."[1] Although the questionnaires were "purportedly filled out . . . by the medical providers," the court noted that "[t]he responses . . . by the medical providers were not certified," and there was no indication that each physician had offered an opinion to a reasonable degree of medical certainty within his area of expertise. Indeed, in deposition testimony presented at trial, one of the treating physicians whose opinion had been identified by Simmons-Grab as a basis for her opinion stated that although it was "possible" that plaintiff would need additional medical care in the future, he could not testify "within a reasonable degree of medical probability" that any such care would be needed.

---

[1] A questionnaire may be an appropriate device for a life care expert to use in the collection of facts or data relevant to his or her opinion. We address only the expert's use of questionnaires in this case to elicit the opinions of treating physicians as to plaintiff's future need for medical care.

The Appellate Division held that the trial court's decision to bar the expert testimony constituted error.  Id. at 202-04.  It stated that "[e]ven if some of the underlying information was somehow improperly considered by [Simmons-Grab], such was not a basis for the wholesale exclusion of her entire opinion."  Id. at 203-04.  The Appellate Division did not rule on the admissibility of Simmons-Grab's opinion; it left to the trial court on remand the "discretion to employ any procedure it deems fit to resolve" defendant's objection to that opinion.  Id. at 204.

We offer the following comments to guide the trial court on remand in its role under N.J.R.E. 702 and N.J.R.E. 703 as "the gatekeeper of expert witness testimony."  In re Accutane Litig., 234 N.J. 340, 391 (2018).

In appropriate circumstances, an expert witness may rely on the opinion of another expert in a relevant field.  See N.J.R.E. 703 (providing that an expert may rely on "facts or data in the particular case," which "may be those perceived by or made known to the expert at or before the hearing," and that such facts or data need not be admissible in evidence "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject"); Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 8 on N.J.R.E. 703 (noting that "[t]he authorization for one

4

expert to rely on the opinion of another" stated in the predecessor rule to N.J.R.E. 703 "continues under the present rule").

That principle, however, does not obviate the need to demonstrate that the treating physician on whom the life care expert relies actually holds the opinion attributed to him or her, which can be accomplished by means of a report by the treating physician, his or her trial testimony, or other competent evidence. See generally R. 4:10-2(d) (addressing reports of treating physicians); R. 4:14-9 (addressing discovery and de bene esse depositions of treating physicians). As in other settings, any expert's or treating physician's opinion on which the life care expert relies "must be couched in terms of reasonable medical certainty or probability." Creanga v. Jardal, 185 N.J. 345, 360 (2005) (quoting State v. Freeman, 223 N.J. Super. 92, 116 (App. Div. 1988)); see also Costantino v. Ventriglia, 324 N.J. Super. 437, 449 (App. Div. 1999) (ruling that the plaintiff's vocational expert could rely on the trial testimony of the plaintiff's medical expert that "there was a reasonable medical probability that [the plaintiff] would not be able to work as a construction laborer for the entire course of his normal work life").

In the event that plaintiff seeks to present the expert testimony of Simmons-Grab on remand -- and defendant challenges the reliability of that opinion -- the trial court should conduct a hearing pursuant to N.J.R.E. 104(c),

5

and determine the question of admissibility in accordance with the standards prescribed by N.J.R.E. 702 and N.J.R.E. 703.


        CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in this opinion.